**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,      )
                                 )      Case No.  1:08-cr-55-SJM-1
      v.                         )
                                 )
JEREMY NOYES                 )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District J.,

     In this criminal matter, the Defendant, Jeremy Noyes, is charged with one count each of transporting, receiving, and possessing material depicting minors engaged in sexually explicit conduct and one count of transporting obscene matter.  The evidence giving rise to these charges was obtained as the result of searches that were conducted of Noyes' email accounts, residence, and thumb nail drive.  Each search was conducted pursuant to a warrant obtained by Special Agent Tom Brenneis of the FBI.

     Presently pending before me in the above-captioned matter is the Defendant's motion to suppress the fruits of these searches.  This Court has subject matter jurisdiction pursuant to 18 U.S.C. §3231.  For the reasons set forth below, the motion to suppress will be denied.

## I.     BACKGROUND

A.  The Search of the Yahoo!, Inc. and  Google Accounts

     The first two challenged warrants authorized searches of, respectively, Noyes' Yahoo!, Inc. and Google e-mail accounts for evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 2252 and 2422.  Agent Brenneis' applications for these two warrants were submitted contemporaneously to Magistrate Judge Susan Paradise Baxter and were signed by her on July 31, 2008.

The "Yahoo Warrant," as we shall refer to it, sought permission to search "a Yahoo!, Inc. account controlled by and using the e-mail address 'jeremy_noyes@yahoo.com,'" located in the Northern District of California. A document designated "Attachment A," which was attached to and incorporated into the warrant by reference, designated the items to be seized from this account, *to wit*:

1. All opened, unopened, deleted, sent, received and draft e-mail, e-mail attachments, residing in the Yahoo e-mail account using the e-mail address "jeremy_noyes@yahoo.com";

2. Any and all account records for the Yahoo E-mail account using the e-mail address "jeremy_noyes@yahoo.com", including subscriber information, such as name and address, date of birth, gender, date account created, account status, registration from IP, alterante [sic] e-mail addresses, log-in IP addresses associated with session times and dates, complaints and service information;

3. Favorite or bookmarked websites and buddy lists contained within the Yahoo e-mail account using the e-mail address "jeremy_noyes@yahoo.com";

4. Any records of passwords, login names, dates, times and activity associated with the Yahoo e-mail account using the e-mail address "jeremy_noyes@yahoo.com".

*In the Matter of Search of Yahoo!, Inc. Account Controlled By and Using the E-mail Address "jeremy_noyes@yahoo.com,"* Case No. 1:08-mj-42-SPB-1 (W.D. Pa.) (hereinafter the "Yahoo Warrant") (Doc. No. [2] at p. 2.).

The second warrant, which we shall refer to as the "Google Warrant," sought authority to search "a Google account controlled by and using the e-mail address 'jeremynoyes@gmail.com.'" Like the Yahoo Warrant, the Google Warrant indicated that the target e-mail account was located in the Northern District of California. Moreover, like the Yahoo Warrant, the Google Warrant incorporated by reference an "Attachment A," which listed the items to be seized from the account. These items were essentially identical to those listed in Attachment A to the Yahoo Warrant, except that they referenced the e-mail address "jeremynoyes@gmail.com" rather than the e-mail address "jeremy_noyes@yahoo.com." The one other notable feature of the Google Warrant is that its Attachment A mistakenly uses the

phrase "Yahoo e-mail account" in place of the phrase "Google e-mail account" in reference to items 2 through 4, such that the list of items to be seized in the Google Warrant, as set forth in Attachment A, reads as follows:

1. All opened, unopened, deleted, sent, received and draft e-mail, e-mail attachments, residing in the Google account using the e-mail address "jeremynoyes@gmail.com";

2. Any and all account records for the Yahoo E-mail account using the e-mail address "jeremynoyes@gmail.com", including subscriber information, such as name and address, date of birth, gender, date account created, account status, registration from IP, alterante [sic] e-mail addresses, log-in IP addresses associated with session times and dates, complaints and service information;

3. Favorite or bookmarked websites and buddy lists contained within the Yahoo e-mail account using the e-mail address "jeremynoyes@gmail.com";

4. Any records of passwords, login names, dates, times and activity associated with the Yahoo e-mail account using the e-mail address "jeremynoyes@gmail.com".

*In the Matter of Search of Google Account Controlled By and Using the E-mail Address "jeremynoyes@gmail.com,"* Case No. 1:08-mj-43-SPB-1 (W.D. Pa.) (hereinafter "Google Warrant") (Doc. No. [2] at p. 2.).

Identical sworn affidavits (referred to hereinafter as the "July 31, 2008 Affidavit of Probable Cause" or "APC-1") were submitted by Special Agent Brenneis in support of the Yahoo and Google Warrants.[1]  This affidavit asserted that there was probable cause to believe that a search of the aforementioned accounts would yield evidence, fruits, or instrumentalities of criminal activity, specifically violations of 18 U.S.C. § 2252(a)(4)(B),[2] pertaining to the

---

[1]  This affidavit submitted in support of the Yahoo and Google Warrants is filed separately at *In the Matter of the Search of Yahoo!, Inc. Account Controlled By and Using the E-Mail Address" jeremy_noyes@yahoo.com," Case No. 1:08-mj-42-SPB-1 (W.D. Pa.) at Document 1 and In the Matter of the Search of Google Account Controlled By and Using the E-mail Address "jeremynoyes@gmail.com,"* Case No. 1:08-mj-43-SPB-1 (W.D. Pa.) at Document 1.
[2]  Section 2252(a)(4)(B) makes it a crime to:

> ... knowingly possess[ ], or knowingly access[ ] with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if --

possession of material involving the sexual exploitation of minors, and 18 U.S.C. § 2422(a),[3] pertaining to the persuasion, inducement, enticement or coercion of individuals to travel in interstate or foreign commerce for the purpose of engaging in criminal sexual activity.  (*See* APC-1 at ¶¶2 and 4(a)(-b).)[4]

In support of this assertion of probable cause, APC-1 stated that, on June 29, 2008, the Erie FBI office had received information from headquarters concerning an anonymous complaint which had been submitted on the FBI webpage two days earlier by an individual using the fictitious name "Sally Ann Slokum."  (APC-1 at ¶ 13.)  Specifically, Slokum had reported that a person by the name of Jeremy Noyes, 723 Brown Avenue, Erie, Pennsylvania, was attempting, via the internet, to obtain a four year-old female, named Abby, and her mother Alex, as sex slaves.  Slokum had indicated that Alex was originally from West Virginia but was now living with her daughter in New Zealand.  (*Id.*)  According to Slokum, Alex and Abby were supposed to travel to Erie, Pennsylvania from New Zealand in April of 2008 but had been delayed by immigration issues and the selling of their house.  (*Id.*)  Included in APC-1 was a direct quote from Slokum's complaint, which read as follows:

> Jeremy Noyes of 723 Brown Ave in Erie, PA is attempting to obtain a 4 year old
> female sex slave over the Internet.  He is arranging this with the girl=s (sic)

---

**(i)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

**(ii)** such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(4)(B).

[3] Section 2422(a) makes it a crime to "knowingly persuade[ ], induce[ ], entice[ ], or coerce[ ] any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempt[ ] to do so."

18 U.S.C. § 2422(a).

[4] Paragraph 2 of the Affidavit initially references 18 U.S.C. § 2242(a), but it is clear from the surrounding context of the citation that the intended reference was to §2422(a), not § 2242(a).  We make this assumption based on the fact that other statutory references in ¶¶ 2 and 4(b) of the Affidavit cite to § 2422(a) and ¶ 4(b) goes on to describe the type of conduct prohibited by that provision.  In addition, § 2242 does not have a subparagraph designated (a).

> mother, who is also to be his sex slave.  The woman also gave birth within the last week and the baby is also to be his slave.  He has been instructing the woman on how to train the girl including bondage, vaginal and anal dilation, having the girl drink her own urine so she can be a toilet slave, exposing her to pornographic training tapes while masturbating her, and extreme punishments such as locking her in a closet with no food for three days.

(APC-1 ¶ 14.)

The information provided by "Sally Ann Slokum" also indicated that Noyes was in possession of a collection of child pornography and that he had used the website "www.collarme.com," the same website through which he had found Alex, to make contact with other individuals in the United States who are interested in the bondage, dominance, sadism, and masochism lifestyle.  (APC-1 at ¶ 15.)   APC-1 quoted Slokum's complaint as having stated:

> Noyes has threatened to kill me and my family so I am not putting my real name on here because he definately (sic) will not rest until we are dead.  All the evidence you need is in his computer and that little girl's mind.  Please save her.

(APC-1 at ¶ 16.)[5]

According to APC-1, on July 16, 2008 Agent Brenneis conducted a search on the Internet search engine Google for information about Jeremy Noyes.  (APC-1 at ¶ 16.)[6]  The search revealed a listing for a blog hosted by someone using the name "borderlinegrrl" [sic].  (*Id*.)  Upon reviewing the blog, Agent Brenneis discovered an entry matching some of the exact verbiage provided by "Sally Ann Slokum" to the FBI as set forth in APC-1 and recited above.  (*Id*.)   Other postings on the blog referred to the author as being a classmate of Jeremy Noyes at the Lake Erie College of Osteopathic Medicine ("LECOM").  (*Id*.)  In another entry the author of the blog referred to herself as "Libby."  (*Id*.)  A check of the current roster of medical students at LECOM revealed that a Jeremy Noyes and an Elizabeth Fleming were both currently attending there.  Agent Brenneis then obtained contact information for both of these individuals from LECOM.  (*Id*.)

---

[5]  APC-1 contains two paragraphs numbered 16.  This citation is to the first such paragraph.

[6]  This reference and those that follow are to the second paragraph numbered 16.

Agent Brenneis contacted Elizabeth Fleming on July 21, 2008, at which time she admitted having provided the tip to the FBI under the name "Sally Ann Slokum." (APC-1 at ¶17.) Ms. Fleming also revealed that she had begun dating Noyes in January 2008 after posting an ad on the bondage, dominance, sadism, and masochism website "www.collarme.com." (*Id.*) She stated that, thereafter, she had developed a sexual relationship with Noyes for the next several months, during which time she became a slave to him. (*Id.*)

According to APC-1:

> 18.    Fleming also revealed [...]that over the course of their relationship Noyes had told Fleming about a woman from New Zealand named Alex and her four year old daughter, Abbey.[7] Noyes explained to Fleming that he had met Alex on the Internet. Noyes showed Fleming pictures of Alex and Abbey including one where there were injuries to Alex's legs and buttocks. Alex was bleeding in the photo with multiple gashes and welts. Noyes told Fleming that Alex had explained to Noyes that the injuries to Alex had been caused by an ex-boyfriend and she had not been able to find anyone since then that was willing to do the same thing. Noyes also revealed to Fleming that Alex had explained to Noyes that Alex felt she needed someone in her life that could discipline her in a similar fashion on a regular basis. This made Noyes very excited that he would be able to dominate someone in this kind of relationship. Noyes further explained to Fleming that Alex wanted her daughter, Abby, to be impregnated at a young age just like she had been. Noyes also revealed that Alex was currently pregnant and was due to give birth in June 2008.

> 19.    Fleming further explained to your affiant that in early March 2008, she and Noyes traveled together to a medical conference at the West Virginia School of Osteopathic Medicine. The topic of the conference was pediatric osteopathic manipulation. During this trip, Noyes revealed to Fleming that he was attending this conference because he was planned [sic] to have Alex move from New Zealand to Erie to live at his residence where he would deliver Alex's new baby. Noyes further revealed to Fleming that his long term intent was to assemble a "family" of female sex slaves that would begin with Alex and Abby. Noyes intended to impregnate Abby when she was between the ages of eight and fourteen and then continue to breed the furture [sic] offspring that would result from his plan. Noyes intends to buy a farm or an island where he could put his new society together.

> 20.    Noyes also explained to Fleming that he had informed Alex of his intentions and she was preparing Abby via anal and vaginal dilation, bondage, and

---

[7]  The affidavit contains two different spellings of the child's name. As it is not clear which spelling is correct, we simply reproduce the Affidavit as it originally appears.

having Abby watch pornography while Alex masturbated the child. Noyes told Fleming he wanted her to be a part of his "family" and that if she ever revealed his plans to anyone he would kill her and her family.

21.     Shortly after the trip to West Virginia, Noyes showed Fleming the profile that Alex had on the collarme.com website. The profile indicated that Alex was a slave to her father growing up and wanted to be a submissive slave to another person now. Noyes also showed Fleiming [sic] a photo of Abbey which revealed welts on the child's body. Noyes indicated that these welts were caused by a beating from one of Alex's boyfriends, when Abby refused to perform oral sex. When informed of this, Fleming indicated to Noyes that she was glad Abby had refused. Noyes then became angry and said that Abby needed to learn how to be submissive. Noyes also said that he would cut the welts off Abby's body with a razor so that no one would inquire about them. Subsequently, Noyes has indicated that Abby has become much more willing to perform oral sex and has even learned to "deep throat." Noyes also stated that Alex told him that Abby had recently stated "mommy I want a happy cock in my pussy", which Noyes took as a very positive step in Abby's development as a sex slave. Noyes also finds it charming that one of Abby's favorite toys is a vibrator.

22.     Noyes has informed Fleming that the arrival of Alex and Abby from New Zealand has been delayed by immigration issues. Alex is also in the process of selling her house in New Zealand.

23.     Noyes also told Fleming that his "family" or "society" would also include a woman named Melissa as a wet nurse for the children. Noyes has also informed Fleming that Melissa utilizes the computer screen name "breederbitch".

24.     Fleming has also related to your affiant an instance where she viewed an item indicative of Noyes' sexual interest in children. Sometime between January and April 2008, Fleming was present when Noyes plugged a thumb drive into a computer at the Lake Erie College of Osteopathic Medicine and inadvertently caused a child pornography cartoon to be displayed on the computer's screen. Noyes then quickly closed the image and removed the thumb drive. Fleming then subsequently inquired about the cartoon and Fleming explained that he had several similar images which he needs to discard.

25.     Fleming has been under the care of a psychiatrist since the beginning of January 2008. Fleming is being treated for several different issues including depression, anxiety, and male dependence. Fleming reports that she has been diagnosed with borderline personality disorder. Throughout the treatment, Fleming has been prescribed the medications Celexa, Lamicpal, Ritalin, and Xanex.

26.     The information that Fleming provided to your affiant also includes a series of e-mails and computer chats which are corroborative of Fleming's account. The

7

e-mails and chats (along with an attachment) are attached hereto and incorporated herein as Exhibit 1.  Specifically, Fleming provided the following:

a)  a March 5, 2008, e-mail from Noyes to Fleming wherein Noyes provides details for his plan regarding his "family" or "society."  Fleming also provided an attachment to this e-mail which is a spreadsheet/timeline detailing how Noyes wants to develop his "family."

b)  a March 10, 2008 e-mail from Noyes to Fleming which provides a chat log detailing a chat between Noyes and "breederbitch" which includes a discussion about Noyes coaching Alex on the proper way to prepare Abby for sexual activity.  The chat log also includes Noyes' view of "breederbitch"'s role in the pending "family."  The chat log also evidences "breederbitch"'s concern that the child slaves be bisexual as opoosed [sic] to gender specific.

c)  a June 15, 2008, e-mail from Noyes to Fleming updating Fleming on Alex's situation and revealing that Alex had given birth to a child named Morgan around June 10, 2008.

(APC-1 at ¶¶ 18-26.)

Based upon the foregoing information, which included copies of the referenced e-mails sent from Noyes to Fleming, Magistrate Judge Baxter signed the search warrants for Noyes' Yahoo!, Inc. and Google e-mail accounts.  The warrants were served and, on August 6, 2008, Google provided Special Agent Brenneis a compact disc containing the contents of the jeremynoyes@gmail.com account, including all of the e-mail messages contained within that account.   On August 11, 2008, Special Agent Brenneis received a compact disc from Yahoo!, Inc. containing the contents of the jeremy_noyes@yahoo.com account.

Agent Brenneis' review of the Yahoo account revealed e-mail discussions involving the sexual exploitation of minors, but it did not result in the discovery of any images depicting such exploitation.  His review of the Google gmail account, however, revealed the presence of several e-mail messages sent from jeremynoyes@gmail.com to another e-mail account with attachments containing numerous images of prepubescent minors engaged in sexually explicit activity.  Also included in the attachments were animations depicting the sexual abuse of minors.

B. <u>The Search of Noyes' Residence</u>

The evidence obtained from the Yahoo and Google account searches led Special Agent Brenneis, on August 13, 2008, to seek a second warrant authorizing a search of Noyes' home. In his supporting affidavit of probable cause (hereinafter referred to as the "August 13, 2008 Affidavit" or "APC-2"), Agent Brenneis discussed the computer technology available to, and utilized by, individuals involved in the sexual exploitation of children and the manner and means by which such technology is searched.  (APC-2 at ¶¶ 4(a)-(i) and 6-13.)  Included in APC-2 was the same information concerning the tip from "Sally Ann Slokum" and Agent Brenneis' ensuing investigation of Elizabeth Fleming that had previously been included in Paragraphs 13-26 of the July 31, 2008 Affidavit of Probable Cause, including the attachments which had been incorporated as Exhibit 1 to APC-1.  (*Id.* at ¶¶ 14-28.)  Agent Brenneis further discussed in his August 13, 2008 Affidavit the results of his search of Noyes's Yahoo and Google e-mail accounts.  With respect to the latter, Agent Brenneis asserted the following:

> 30.    Your affiant's review of Noyes' Google account revealed the presence of three e-mail messages, dated June 6, 2008, sent from jeremynoyes@gmail.com to an account identified as julliettehodge@gmail.com.  Attached to each of these three e-mail messages were numerous images of prepubescent minors engaged in sexually explicit activity.  Also included in the attachments are animations depicting the sexual abuse of minors.

> 31.    Your affiant's review also revealed that on July 6, 2008, the account identified as julliettehodge@gmail.com sent eight separate email-messages to jeremynoyes@gmail.com which each contained multiple images of minors engaged in sexually explicit conduct.  In conjunction with the exchange of the images of child pornography, an instant message exchange occurred between the two accounts wherein each encouraged the other to send more imagery involving minors engaged in sexually explicit conduct.  This instant message exchange is attached hereto and incorporated as Exhibit 2.

> 32.    Your affiant also discovered that on July 19, 2008, julliettehodge@gmail.com sent jeremynoyes@gmail.com three additional messages which contained images of minors engaged in sexually explicit conduct.

(APC-2 at ¶¶ 30-32.)

The search warrant for Noyes' residence was executed on August 13, 2008, as a result of which Noyes' computer equipment was seized, along with some other material. Forensic examination of his computer revealed the presence of numerous images depicting prepubescent minors engaged in sexually explicit conduct.

C. <u>The Search of Noyes' Thumb Drive</u>

On August 13, 2008 federal authorities obtained a warrant for Noyes' arrest on charges of transporting and receiving material depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252. The arrest warrant was served on Noyes at his residence on August 18, 2008. During a search of Noyes' person incident to his arrest, law enforcement agents discovered a 4 gigabyte thumb drive in the breast pocket of his shirt.

On August 19, 2008, Special Agent Brenneis sought and obtained a warrant for the search of the thumb drive. In support of the warrant application, Agent Brenneis submitted a third affidavit of probable cause (hereinafter referred to as the "August 19, 2008 Affidavit" or "APC-3") in which he recounted the details of his investigation into Elizabeth Fleming and Jeremy Noyes, as set forth in APC-1 and APC-2, as well as the circumstances leading to the discovery of the thumb drive.

As a result of the foregoing searches, federal law enforcement authorities uncovered numerous images of minors engaged in sexually explicit conduct, as well as numerous cartoons, animations and drawings depicting minors, most of whom appeared to be prepubescent, being sexually abused by adults. The evidence included, in some cases, infants and toddlers. As a result of this evidence, Noyes was indicted by a federal grand jury on September 10, 2008 for violations of 18 U.S.C. §§2252(a)(1), (a)(2), and (a)(4)(B) as well as 18 U.S.C. § 1462.

## II.       DISCUSSION

In his motion to suppress, Noyes challenges the validity of all four search warrants, beginning with the Yahoo and Google warrants. He contends that these initial warrants were facially deficient and that the evidence obtained as a result of them thereby became the "fruit of the poisonous tree" which then irreparably tainted the subsequent warrants.

The Fourth Amendment to the Constitution directs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST., amend. IV.  The Supreme Court has stated that the existence of probable cause is to be assessed based on a totality-of-the-circumstances analysis.  This requires that the issuing magistrate judge "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  *See also United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir.2010).  In reviewing a magistrate judge's decision to issue a warrant, the district court must determine whether the magistrate judge had "a substantial basis for determining that probable cause existed."  *United States v. Dennington*, No. 10-1357, 2010 WL 3899655 at *2 (3d Cir. Oct. 6, 2010) (*quoting United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir.2002)) (internal quotation omitted) (slip copy).  Our review under this standard, though deferential, must be meaningful and not merely a "rubber stamp."  *Id.* (quoting *Zimmerman*, 277 F.3d at 432).

Where a search is undertaken pursuant to a warrant later determined to be invalid, the remedy, generally speaking, is exclusion from trial of any evidence obtained by way of the illegal search.  *See Zimmerman,* 277 F.3d at 438.  It is well established, however, that good faith on the part of law enforcement officers acts as an exception to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897 (1984).  As our Court of Appeals has explained:

> The purpose of the exclusionary rule is to deter law enforcement officers from acting in violation of the Fourth Amendment.  [*Leon, supra*] at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). This goal is not well served by suppressing evidence obtained in objectively reasonable reliance on a Magistrate Judge's determination that probable cause supported issuance of a warrant.  *Id*. at 918-20.  Moreover, policemen are not attorneys, and "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  *Id*. at 921.  Thus so long as the officer acted reasonably and in good faith in obtaining and executing the warrant, evidence gathered in pursuance thereto will not be suppressed even if it is later determined that the Magistrate Judge's probable-cause determination was in error.  *Id*. at 922.

*Dennington, supra*, at *2.

There are four scenarios in which law enforcement should be seen as having failed to act with good faith, despite the issuance of a warrant.  In these scenarios, our Circuit Court of Appeals has said, exclusion "remains on the table":

> 1. Where the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2. Where the Magistrate Judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> 4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Dennington, supra,* at *2-3 (citing *Zimmerman*, 277 F.3d at 436-37).

Here, Noyes challenges the warrants only on the basis of the third and fourth scenarios. His various challenges against each of the warrants will be addressed seriatim.

**A.**

With respect to the Yahoo and Google Warrants, Noyes asserts that both are defective for their "complete lack of probable cause."  (Mem. in Supp. of Def.'s Mot. to Suppress [97] at p. 2.)  The deficiency, he claims, is in their common supporting affidavit which, he notes, "lacks any information as to how or why an alleged e-mail account of the Defendant, residing in and being prosecuted in the Western District of Pennsylvania, would be in the Northern District of California."  (*Id.*)  The affidavit, he notes, "says nothing about e-mail, what e-mail is, how e-mail works, why e-mail would be in the Northern District of California or even [precisely] where in the Northern District of California it would be."  (*Id.*)  To demonstrate his point, and to highlight what he considers to be the affidavit's deficiencies, Noyes has appended to his motion an exemplar warrant from a separate criminal matter pertaining to e-mail located in a remote

location.  This exemplar, Noyes submits, "shows what such a warrant should contain and look like."  (*Id.* at p. 3.)

I find that Noyes' first objection lacks merit.  When a search warrant is reviewed for a sufficiency-of-probable cause determination, its supporting affidavit must be read in its entirety and construed in a common sense and nontechnical manner.  *See United States v. Williams*, 124 F.2d 411, 420 (3d Cir. 1997).  The focus must be on what is included in the affidavit, not on what is omitted.  *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993).  Moreover, "[p]robable cause does not require direct evidence linking a crime to a particular place.  ...  Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense."  *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006) (internal quotation marks and citations omitted).  For probable cause to exist, an issuing judge need not determine that the evidence sought is in fact in the place to be searched, or even that it will more likely than not be found where the search takes place; instead, the issuing judge "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit."  *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985).  *See also United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990).

Viewed according to these standards, the information set forth in APC-1 establishes a "fair probability" that evidence of criminal activity and/or contraband would be found in the two e-mail accounts specified in the warrants.  The affidavit's highly detailed discussion of the anonymous, unsolicited tip provided by Elizabeth Fleming and the particulars of Agent Brenneis' ensuing investigation provided sufficiently reliable grounds for believing that Noyes was engaged in criminal activity involving the sexual exploitation of minors.  Indeed, Noyes does not quibble with the idea that APC-1 provided grounds for the Magistrate Judge to believe that he was involved in illegal activity; rather, his first challenge concerns only the sufficiency of the nexus between the evidence sought and the place to be searched.  There was, he contends, no basis for the Magistrate Judge to conclude that evidence of his alleged illicit activity would be found in the two remote e-mail accounts located in the Northern District of California.  But the exhibits that were attached and incorporated into APC-1 clearly showed that Noyes was using the specified Yahoo and Google e-mail accounts to communicate with others in

furtherance of his alleged criminal activities.  The fact that the affidavit did not itself discuss what e-mail is and how it works is of no moment; I agree with the Government's contention that e-mail is so ubiquitous and commonplace in today's society (and within the legal community in particular) that its basic functioning would have been a matter of common knowledge and experience for the reviewing Magistrate Judge.

Nor is it problematic, in my view, that the Affidavit fails to explain why the accounts were located in the Northern District of California.[8]  For purposes of the Fourth Amendment's probable cause requirement, the affidavit need only establish a "fair probability" that contraband or evidence of a crime will be found in a particular place.  *Gates*, 462 U.S. at 238.  There is no requirement that the affidavit explain why that "particular place" is located in a given geographic location.  Here, it was clear from the face of the warrants that the two e-mail accounts in question were a particular Yahoo!, Inc. account and a particular Google account and that these two accounts were located in the Northern District of California.  APC-1 made sufficiently clear that both accounts had been used in furtherance of Noyes' alleged criminal activities.  Accordingly, the requirements of probable cause were satisfied.[9]

---

[8]  I note that, pursuant to § 2703 of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*, the Government may obtain a search warrant requiring third party e-mail service providers and internet service providers to disclose the content of stored communications, as well as other transactional and subscriber data, without notice to the subscriber.  *See* 18 U.S.C.A. § 2703.  Moreover, the Act authorizes courts to issue search warrants for electronic communications and evidence located in other judicial districts in cases where the issuing court has jurisdiction over the offense under investigation.  *See* 18 U.S.C. § 2703(a) (providing that a search warrant for electronic communications in electronic storage may be issued only 'by a court of competent jurisdiction"); *Id.* at § 2711(3)(A)(i) (defining a "court of competent jurisdiction" as a District Court that "has jurisdiction over the offense being investigated").  *See also United States v. Berkos*, 543 F.3d 392, 397 n.4 (7th Cir. 2008) (Section 220 of the USA Patriot Act amended 18 U.S.C. § 2703 such that "search warrants could be issued 'by a court with jurisdiction over the offense under investigation,' rather than exclusively by the court with geographical jurisdiction of the electronic property sought by the warrant.");  *United States v. Freeman*, Crim. No. 10-68 (JRT/RLE), 2010 WL 4386897 at *12 n. 6 (D. Minn.  May 13, 2010) (noting same); *United States v. Kernell*, No. 3:08-CR-142, 2010 WL 1408437 at *1 (E.D. Tenn.  April 2, 2010) (same).

[9]  In any event, to the extent the exact physical whereabouts of these two e-mail accounts is important to the probable cause analysis, the Magistrate Judge could have judicially noticed the fact that both Yahoo!, Inc. and Google are headquartered in Santa Clara County in Northern California, which falls within the jurisdiction of the Northern District of California.  *United States v. Ellsworth*, 647 F.2d 947, 963 (9th Cir. 1981) (magistrate judge passing on a warrant application is permitted to take judicial notice of facts to the same extent as the district court); *United States v. Sevier*, 539 F.2d 599, 603 (6th Cir. 1976) (same).  See *also* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the

Noyes next criticizes APC-1 on the ground that it includes a discussion concerning computer searches and seizures which, he maintains, "has absolutely nothing to do with e-mail stored far away on a remote internet service provider[]." (Mem. in Supp. of Def.'s Mot. to Suppress [97] at p. 3 (footnote omitted).) "It is obvious," Noyes states, "that the government has merely 'cut and pasted' language for the search of a computer hard drive located at a fixed location and inserted that language into the Affidavit of Probable Cause for remotely held e-mail accounts." (*Id.*).

Although Noyes may well be right that this information was surplusage inadvertently included in the affidavit, it does not follow as a result that the affidavit failed to establish probable cause for the search. The Fourth Amendment does not require that an affidavit in support of a search warrant be free of all defects and flaws. See *United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008) ("[P]erfection is not required for an affidavit to pass constitutional muster. Rather, the affidavit only must be sufficient to allow a reasonably prudent person to believe that evidence of a crime will be found."). Here, I conclude that the information in APC-1 pertaining to a search of computers, though irrelevant surplusage, is not the sort of misinformation that would have likely confused the Magistrate Judge, nor would it have been material to her probable cause determination. Even if the discussion pertaining to computer searches was redacted from APC-1, the remaining information supplied a substantial basis for the Magistrate Judge's probable cause determination. *See, e.g., United States v. Takahashi,* No. 07-10055, 267 Fed. Appx. 674, 674, 2008 WL 467782 at **1 (9th Cir. Feb. 22, 2008) (affidavit supported finding of probable cause to search defendant's apartment despite the fact that only a small portion of the lengthy affidavit concerned defendant's residence and some of the information included in the affidavit was irrelevant to the probable cause determination); *United States v. McKenzie*, 446 F.2d 949, 953 (6th Cir. 1971) (statements in search warrant affidavit about an informant's tip that were devoid of any background discussion were mere

---

territorial jurisdiction of the trial court *or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned*.") (emphasis added).

surplusage that did not detract from the otherwise legally sufficient probable cause determination that was based on the affiant's personal observations).

Noyes also raises a separate facial challenge to the Google Warrant based on the fact that "Attachment A" to the warrant, though correctly identifying the e-mail account to be searched as "[jeremynoyes@gmail.com](mailto:jeremynoyes@gmail.com)," repeatedly and mistakenly describes this account as a "Yahoo e-mail account" when, according to Noyes, "it is universally known that the suffix '@gmail.com' means a Google account." (Mem. in Supp. of Def.'s Mot. to Suppress [97] at p. 5.) Thus, Noyes objects, Attachment A suffers from what is "likely sloppy 'cut and paste' work on the government's behalf" and this, in his opinion, "has rendered the **Google Warrant** facially defective." (*Id.*)

Presumably, Noyes is contending that the Google Warrant violates the Fourth Amendment's "particularity" mandate, which requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It is well established that the Fourth Amendment's requirements are "practical and not abstract" and, thus, the sufficiency of a warrant must be judged in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *United States v. Christine*, 687 F.2d 749, 760 (3d Cir. 1982). We also recall that the "particularity requirement" of the Fourth Amendment is designed to achieve three things:

> First, it memorializes precisely what search or seizure the issuing magistrate intended to permit. Second, it confines the discretion of the officers who are executing the warrant. *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). Third, it "inform[s] the subject of the search what can be seized." *Bartholomew [v. Commonwealth of Pa.]*, 221 F.3d [425, 429 (3d Cir. 2000)]. For these reasons, although a warrant should be interpreted practically, it must be sufficiently definite and clear so that the magistrate, police, and search subjects can objectively ascertain its scope. *See Groh [v. Ramirez]*, 540 U.S. [551, 556-57], 124 S. Ct. at 1289, 2004 WL 330057.

*Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004).

Read in a practical and nontechnical manner, the Google Warrant does not violate the Fourth Amendment's particularity requirement. In numerous places, the warrant correctly identifies the subject e-mail account, "[jeremynoyes@gmail.com](mailto:jeremynoyes@gmail.com)," as a Google account. For

example, on the face of the warrant the caption of the case clearly appears as follows:  "*In the Matter of the Search of Google account controlled by and using the e-mail address 'jeremynoyes@gmail.com*.'"  Elsewhere on that same face page, the warrant states unambiguously that it is authorizing a search of "a Google account controlled by and using the e-mail address 'jeremynoyes@gmail.com.'"  Attachment A to the Google Warrant lists the categories of items to be seized from this e-mail account and indicates with respect to Item number 1 that this includes "[a]ll opened, unopened, deleted, sent, received and draft e-mail, e-mail attachments, residing in the Google account using the e-mail address 'jeremynoyes@gmail.com.'"

　　　　Noyes' objection arises from the fact that Item Numbers 2 through 4 make reference to a "Yahoo e-mail account using the e-mail address 'jeremynoyes@gmail.com.'"  Viewed in context, however, it is clear to the reader that the phrase "Yahoo e-mail account" is merely a typographical error and that the account in question is a Google account.  Under the circumstances, there could be no real confusion about which e-mail account search was being authorized by the Google Warrant, especially since the correct e-mail address "jeremynoyes@gmail.com" was used in every instance and Noyes himself asserts that "gmail" is "universally known" to indicate a Google account.  Certainly, the corporate agents of Google who responded to the warrant would have been aware that the e-mail address "jeremynoyes@gmail.com" denoted a Google account and not a Yahoo account.  Thus, the Google Warrant fulfilled all three purposes of the particularity requirement:  it adequately memorialized the precise search and seizure that the Magistrate Judge intended to permit, it confined the discretion of the officers who executed the warrant, and it informed the subject of the search what could be seized.

　　　　Finally, even if it could be shown that the Yahoo and/or Google Warrants failed to conform to the requirements of the Fourth Amendment, I would decline to suppress the fruits of those searches based upon the law enforcement agents' good faith reliance on those warrants.  As I previously discussed, the "good faith" doctrine generally precludes suppression whenever officers act reasonably and in good faith in obtaining and executing an ostensibly valid warrant, even if it is later determined that the Magistrate Judge's probable cause

17

determination was erroneous. *See Dennington, supra*, at *2. Here, it cannot be said that APC-1 was so lacking in indicia of probable cause as to make any reliance on the Magistrate Judge's probable cause determination unreasonable. Nor can it be said that the Google Warrant was so facially deficient that it failed to particularize the place to be searched or the items to be seized. Because neither of the remaining two exceptions to good faith are applicable here, I need not address them. I conclude that Noyes' motion to suppress should be denied insofar as it relates to the evidence seized from his Yahoo and Google email accounts.

## B.

Noyes next argues that evidence obtained from both his home computer and his thumb drive must be suppressed because the warrants authorizing those searches were defective.[10] Noyes' only challenge to APC-2 and APC-3[11] is the fact that both of these affidavits incorporated information obtained as a result of the Yahoo and Google Search Warrants, which Noyes characterizes as "fruit of the poisonous tree." This information, set forth at ¶¶29-32 of APC-2 and ¶¶ 30-33 of APC-3, established that: (a) Noyes used his Yahoo e-mail account to communicate with others regarding the sexual exploitation of minors and (b) Noyes used his

---

[10]  The warrant to search Noyes' residence was issued by me on August 13, 2008. Neither party has challenged the propriety of my adjudicating Noyes' motion to suppress insofar as it relates to evidence obtained pursuant to this warrant. There is no potential conflict of interest in my doing so because Noyes' objection to the Residence Warrant is merely a derivative "fruit of the poisonous tree" challenge based upon the alleged facial invalidity of the previous two warrants issued by the Magistrate Judge. No similar facial challenge has been made to the Residence Warrant insofar as sufficiency of probable cause is concerned. Regardless, other federal courts have held that recusal is not warranted when an issuing judge is asked to review the facial sufficiency of his own search warrant, provided that no source of extrajudicial information was involved in the original issuance of the warrant. *See, e.g., United States v. Slay*, 714 F.2d 1093, 1094-95 (11th Cir. 1983) (defendant argued that warrant was unsupported by probable cause); *United States v. Henry*, 2008 WL 5110856 at * 2-3 (N.D. W. Va. 2008) (challenge as to whether a substantial basis existed for issuance of the warrant) (citing cases); *United States v. Gove*, No. 4:09CR187, 2010 WL 678215 at *1 n.1 (E.D. Tex. Feb. 24, 2010)(defendant argued that search warrant was not based on probable cause) (citing cases).

[11]  The Thumb Drive Warrant, like the other warrants, incorporates by reference an "Attachment A," which lists the items to be seized. As of the time that Noyes filed his brief in support of the pending suppression motion, the original warrants were still under seal and Noyes had been unable to locate "Attachment A" to the Thumb Drive Warrant. Accordingly, Noyes contended in his brief that, "Should it turn out that the **Thumb Drive Warrant** does not have an attachment A[,] then it to [sic] is facially defective." (Mem. In Supp. of Def.'s Mot. to Suppress [97] at p. 6 n. 6.) The original Thumb Drive Warrant has since been unsealed, *see In the Matter of the Search of Imation 4 Gigabyte USB Thumb Drive*, Case No. 1:08-mj-47-SPB [2] (W.D. Pa.), and it is clear that "Attachment A" does indeed exists and was appended to and incorporated into the original warrant. Accordingly, we need not address this tentative facial challenge to the warrant.

Google e-mail account to send and receive numerous images of prepubescent children engaged in sexually explicit conduct. Without the use of this tainted information, Noyes argues, neither APC-2 nor APC-3 provided a sufficient basis to establish probable cause for the home computer/thumb drive searches.

The short answer to this argument is that, for the reasons previously discussed, the Yahoo and Google searches were not constitutionally deficient. It follows, therefore, that the warrants authorizing the search of Noyes' home computer and thumb drive were not invalid by virtue of their inclusion of information obtained from the Yahoo and Google searches.

Moreover, even if the original Yahoo and Google Warrants were defective, I have already determined that the law enforcement officers' reliance on the apparently validity of those warrants was objectively reasonable. Accordingly, the officers could have reasonably believed that the Residence Warrant and the Thumb Drive Warrant were likewise valid, despite their incorporation of the challenged information in APC-2 and APC-3. Because the officers acted reasonably and in good faith in obtaining and executing the Residence Warrant and the Thumb Drive Warrant, this Court would not suppress the fruits of those searches even if the warrants in question were technically deficient.

Noyes has argued, however, that the good faith doctrine should not apply because of the fact that the warrants in question were apparently drafted with the assistance of the U.S. Attorney's office, rather than by Agent Brenneis acting alone. This argument seems to derive from the fact that police officers are not attorneys and, as the Supreme Court observed in *Leon,* "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." 468 U.S. at 921. It does not follow, however, that *Leon*'s good faith exception to the exclusionary rule should apply *only* when a police officer drafts his own affidavit of probable cause. So far as this Court is aware, no authority for that proposition exists within this circuit. In fact, as one circuit court of appeals has noted, such an interpretation runs contrary to the policy concerns which underlie the "good faith" doctrine:

> It is common practice for a federal prosecutor to work with, alongside, and conjointly with a law-enforcement officer in the drafting of an affidavit in support of a

19

warrant application. In this case, Agent Vergon was the signatory and the fact that it happened to be the AUSA who sat at the keyboard and typed the affidavit is immaterial to our good faith analysis. [The defendant's] counsel is unable to point to any case that says otherwise. In fact, volumes of case law encourage this sort of cooperation between the prosecutor and law-enforcement officers. *See, e.g., Leon*, 468 U.S. at 903-04 n. 4, 104 S. Ct. 3405 (applying good-faith exception where officers consulted with three deputy district attorneys before submitting deficient warrants to the court); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir.1996) (noting that seeking the advice of a district attorney is a factor weighing in favor of determining that the officer's reliance on the warrant was objectively reasonable); *United States v. Carter*, 999 F.2d 182, 184-88 (7th Cir.1993) (holding that a prosecutor's participation in the drafting of a "no-knock" provision of a warrant, later found to be insufficiently justified by the affidavit, did not preclude application of the good-faith exception); *United States v. Tagbering*, 985 F.2d 946, 949-51 (8th Cir.1993) (applying the good-faith exception where a prosecutor had reviewed and signed the warrant affidavit before it was submitted to the court); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991) (noting "an officer's consultation with a government attorney is of significant importance to a finding of good faith").

Refusing to apply the good-faith exception to the exclusionary rule simply because an affidavit was prepared with the assistance and approval of prosecutors would do nothing to forward the rule's basic purpose, to deter police misconduct. As we discuss below and as the district court noted, in a case such as this where the issue is whether probable cause existed, Agent Vergon's consultation with the AUSA particularly supports the finding that his reliance upon the warrant was objectively reasonable.

*United States v. Merritt*, 361 F.3d 1005, 1012 (7th Cir. 2004), *vacated and remanded on other grounds*, 543 U.S. 1099 (2005). *Accord United States v. Otero*, 563 F.3d 1127, 1135 (10th Cir. 2009) (the fact that the affiant consulted with Assistant U.S. Attorney in drafting the search warrant application was an "important indicator of her good faith"); *United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004) (good faith doctrine applied where affidavit in support of search warrant provided detailed information of criminal activity as well as an indication that an Assistant U.S. Attorney had been consulted and had agreed that the information contained in the affidavit would establish probable cause).

### III. CONCLUSION

In summary I conclude that, based on the information contained in APC-1, there was ample probable cause to believe that a search of Noyes' Yahoo and Google e-mail accounts

would lead to the discovery of contraband or evidence of criminal activity; at the very least, the Magistrate Judge had a "substantial basis" for so finding.  I further conclude that the Google Warrant did not suffer from any facial deficiency of a constitutional proportion.  Even if this were not the case, I would conclude that the law enforcement agents acted in objectively reasonable good faith in obtaining and executing the Yahoo and Google Warrants and the fruits of those searches should therefore not be suppressed.

Based on the foregoing, I further conclude that the warrants authorizing the search of Noyes' home computer and thumb drive were not defective by virtue of incorporating information obtained from the Yahoo and Google searches.  Even if the Residence and Thumb Drive Warrants were technically deficient, however, I would uphold the fruits of those searches based on the officers' objectively reasonable reliance on the warrants.

Accordingly, for the aforementioned reasons, Noyes' motion to suppress evidence will be denied.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,              )
                                       )       Case No.  1:08-cr-55-SJM-1
        v.                             )
                                       )
JEREMY NOYES                           )


**O R D E R**

        AND NOW, *to wit*, this 8th Day of December, 2010, for the reasons set forth in the

accompanying Memorandum Opinion,

        IT IS ORDERED that the Motion to Suppress [93] filed by the Defendant, Jeremy Noyes,

be, and hereby is, DENIED.


                                       s/    Sean J. McLaughlin
                                             SEAN J. McLAUGHLIN
                                             United States District Judge


cm:    All counsel of record.